## Case No. 9,145.

### The MARTHA.

[Olc. 140.] 1

District Court, S. D. New York. April, 1845.

SHIPPING—CARRIAGE OF GOODS—DAMAGE—BILL OF LADING—FAULT OF SHIPPER—VIS MAJOR—BURDEN OF PROOF—PAROL TESTIMONY.

1. Where goods are shipped in good order, and are damaged on the voyage, it devolves on the owner of the ship to show that the damage was caused by fault of the freighter, or by vis major.

[Cited in The T. A. Goddard, 12 Fed. 177.]

1 [Reported by Edward R. Olcott, Esq.]

2. Libellant shipped 340 bundles of sheet iron on freight from Liverpool to New-York, receiving a bill of lading that the same was received in good order, and to be delivered in like good order, the perils of the sea excepted; when unladen it was found to be stained and rusted by wet, and injured thereby; and notwithstanding proof that the iron was well stowed, that the ship came in tight and dry, that the iron was taken on board in dry weather, and not exposed to the access of water, the vessel was answerable for the damage. The burden of proof is upon the ship to show that the damage existed when the cargo was laden on board.

3. The acknowledgment in the bill of lading that the cargo is received in good order, though part of the shipping contract, may be explained or disproved by parol testimony.

4. Quere: Whether a general ship is liable for damages to cargo well stowed, caused by exhalations or dampness arising from the cargo on board, (also well stowed,) unless there be a special contract in the affreightment against such loss or injury?

This was an action by the consignee of a quantity of sheet iron (310 bundles) laden on board the ship Martha, at Liverpool, for New York, to recover damages for injury to the iron, by wetting. The libellant offered the bill of lading, which contained the usual conditions and stipulations. He then proved that the iron, when unladen from the vessel, was very wet, and water dripped off it. He further proved the damage caused by the injury amounted to about 30 per cent.

On the part of the claimant, it was shown that the vessel came in tight and dry, and that the iron was well and securely stowed, and was not so placed as to be subject to the access of water or moisture during the voyage.

The mate testified, that when taken on board, it had externally the appearance of being in good order, and that the weather was dry at the time, and the iron was not exposed to wet in lading, or before the ship sailed. Evidence was offered to show that the condition of the iron might be ascribed to its having got wet in the hands of the carriers and lightermen, at Liverpool, before it was delivered to the ship, and an instance of the kind was stated where an attempt was made to impose articles on a ship under similar circumstances, but by watchfulness and caution the deception was detected.

Wm. M. Evarts, for libellant.
Wm. M. Emerson, for claimant.

BETTS, District Judge. The bill of lading undertakes to deliver the iron, then in good condition, in the same order here; but without applying to this contract the character of an absolute assumption or admission of the fact, it must be received as strong prima facie evidence that the property was in good order when received on board the ship. Barrett v. Rogers, 7 Mass. 297. The law does not give a bill of lading the character of a warranty that the property received by the ship is in absolute good order and condition It binds the ship and owner no further

than to the external appearance of the case or boxes, or of the article itself, when imported without envelope. This is especially so as between the freighter and ship-owner (Valin. lib. 3, tit. 2, art. 2; 2 Boulay-Paty, 309, 313); and on general principle, that part of the bill of lading which operates as a receipt, is open to explanation or correction by parol evidence.

The sheets of iron, in this instance, were held together by hoops around them, but not in a way to confine a quantity of fluid, and prevent its being discovered by the mere act of moving the bundles. The injury or exposure of the bundles, by having water already deposited within them, would not thus be ever concealed from observation when they were brought to the ship by the mode of putting them up for exportation; and the claimant is necessarily required to give strong evidence, under such circumstances, that the injury had already been sustained, or the proximate cause of it existed, when the iron was laden on board, otherwise his acknowledgement and undertaking in the bill of lading must stand in force against him.

In this case the libellant does not rely exclusively upon the admission in the bill of lading, but gives positive proof that the iron was delivered to the ship in good order. The fact that it was damaged when delivered to the consignee, fastens the responsibility for the deterioration upon the ship, unless the owner is able to show the injury arose from perils of the sea, or some inherent defects in the article, not discernible when it was received on board. The presumption of the law, without countervailing proof on his part, is, that the injury has arisen from fault or negligence in the stowage or transportation in the ship. Bernadon v. Nolte, 7 Mart. [N. S.] 283.

The ship had a quantity of salt on freight, and an attempt was made to prove it stowed in the vicinity of the iron, in a situation where it might be inferred that an exhalation of dampness from the salt was the means of creating the rust or stain complained of; but the stowage of salt turned out to be in another part of the ship, nor do I think. this being a general ship, the owner would be answerable for this kind of injury received by one part of a cargo from another, if the stowage was in the usual manner, unless the contract of affreightment had stipulated the contrary. There was no evidence that the damage was caused by perils of the sea, or vis major, and it is not enough for the owner to raise a doubt whether the iron came to the ship in a wet condition or received the injury on board, nor to show that it is difficult to account for its condition; but it is cast upon him to prove, affirmatively, that the injury was received before its delivery to the ship, or at least to show circumstances affording a violent presumption that the rust or stain could not have been communicated on ship-board.

Without touching the question, then, whether as against the assignee of the bill of lading, or even the freighter, the ship-owner might prove a fraud practiced on him by the shipper of the goods abroad, in putting them on board in a damaged condition, I am of opinion, upon the evidence produced, that the owner has not shown that the iron came on board wet, or any other fact, discharging his responsibility under the contract in the bill of lading. The engagement of the bill of lading must accordingly be enforced against him, and the libellant is entitled to recover the difference between 4⅛ cents per pound, for which the iron was sold in its damaged condition, and its value here, 5½ cents; together with charges for cartage, labor and money expended in consequence of the damage, but deducting the abatement of duties allowed at the custom-house, because of the damaged state of the iron. The case will be referred to the clerk to state the account. upon the principles of this decree.

NOTE. A case similar to the foregoing has been since decided in Louisiana. The action was for damages of 780 bundles of iron on board ship, by wetting. It was shown in this case, that though the weather had been rough, that the vessel was staunch and well built, and not injured by stress of weather. It was also proved by defendants, by the testimony of the stevedores who loaded the vessel, as well as by other witnesses, that the stowage was such as is customary, and such as is considered safe. But the fact of damage being positively shown, and the burthen of proof resting on the common carrier to show that it was a damage occasioned by the perils of the sea, which fact was not made to appear. the vessel was held liable for the damage. Price v. The Ariel, 10 La. Ann. 413.